# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ECLIPSE AVIATION CORPORATION, *et al.*,<br><br>　　　　Debtors. | Bankruptcy Case No. 08-13031 (MFW)<br>(Chapter 11)<br>(Jointly Administered) |
| MAVERIK, INC.<br><br>　　　　Plaintiffs,<br>v.<br><br>ECLIPSE AVIATION CORPORATION, KINGS ROAD INVESTMENTS, LTD., HBK MASTER FUND, CITADEL INVESTMENT GROUP, and ETIRC AVIATION S.A.R.L.,<br><br>　　　　Defendants. | Adv. Pro. No. 08-_____ (MFW) |

## COMPLAINT

Maverik, Inc. ("Maverik" or "Plaintiff"), plaintiff, by and through its undersigned counsel, complains of Eclipse Aviation Corporation ("Eclipse"), Kings Road Investments, Ltd. ("Kings Road"), HBK Master Fund ("HBK"), Citadel Investment Group ("Citadel"), and ETIRC AVIATION S.A.R.L. ("ETIRC") (Kings Road, HBK, Citadel and ETIRC are collectively referenced as "Lenders"), defendants, and alleges, as follows:

## Preliminary Statement

1.　　This adversary proceeding is commenced to obtain declaratory and equitable relief with respect to an Aircraft Purchase Agreement between Maverik and Eclipse effective

February 17, 2007, and the addendum to Aircraft Purchase Agreement executed April 16, 2007 (collectively, the "Agreement"), a copy of which Agreement is attached hereto as Exhibit A and incorporated herein by this reference, and the rights of Maverik as against the various Lenders allegedly asserting security interests in the Aircraft.

2. The Agreement provides for Eclipse to sell one Eclipse model EA-500 very light jet, serial no. 000267, configured with various options and specifications designated by Maverik (the "Aircraft") to Maverik for a purchase price of $1,040,000.00, subject to certain adjustments.

**Jurisdiction and Venue**

3. Eclipse filed a voluntary petition for relief in this Court on November 25, 2008, and currently operates as a debtor in possession under chapter 11 of title 11 of the United States Code.

4. This Court has jurisdiction of this adversary proceeding pursuant to 28 USC § 1334(b) as it arises in and relates to the case of Eclipse filed under title 11 of the United States Code in this Court.

5. This action is a core proceeding under 28 USC § 157(b)(2).

6. Venue properly lies in this district pursuant to 28 USC § 1409(a).

**Parties**

7. Maverik is a corporation duly organized and existing under the laws of Wyoming, with its principal place of business in North Salt Lake, Utah.

8. Eclipse is a corporation duly organized and existing under the laws of Delaware, with its principal place of business in Albuquerque, New Mexico.

9. Upon information and belief, Kings Road is an entity organized and existing in New York City, New York.

10. Upon information and belief, HBK is an entity organized and existing in Dallas, Texas.

11. Upon information and belief, Citadel is an entity organized and existing in Chicago, Illinois.

12. Upon information and belief, ETIRC is a foreign entity organized under the laws of Luxembourg, and doing business in the United States, as well as the largest shareholder of Eclipse.

**VLJ Background**

13. Over the past several years, multiple manufacturers have been designing a new class of aircraft called very light jets or VLJs.

14. VLJs are small aircraft with advanced technologies that cost less than other business jets.

15. Aviation forecasters predict that thousands of VLJs will enter the National Airspace System over the next two decades.

16. Eclipse was formed in 1998 with the intent of introducing new technology to the aviation industry.

17. In 2006, the Federal Aviation Administration, United States Department of Transportation ("FAA") certified the first VLJs – one of which was the Eclipse EA-500, a six-seat jet aircraft, which featured advanced avionics and better fuel efficiency.

**Eclipse EA-500**

18. The FAA issued the design certificate for the Eclipse EA-500 on September 30, 2006, and the production certificate on April 26, 2007.

19. The Eclipse EA-500 has been the market leader in terms of purchase orders in the relatively new market of VLJs.

20. The extremely competitive acquisition cost of the Eclipse EA-500, along with the Eclipse pronounced lowest operating cost of any jet on the market and design capability, provided a marketing advantage for Eclipse that resulted in a long waiting list of buyers to purchase the Eclipse EA-500.

21. With the unique capabilities and competitive price, Eclipse was able to sell the Eclipse EA-500 on its self-dictated terms.

**Maverik Purchase of Eclipse EA-500 Reservation**

22. The popularity of the proposed Eclipse EA-500 provided a large list of prospective buyers, including Maverik's predecessor in interest, who in 2002 purchased production slot G0024, which was subsequently designated as serial number 307 in September 2003, and who paid deposits totaling $150,000.00.

23. Maverik operates a chain of retail gasoline stations and convenience stores in the intermountain west, many of which are in rural areas that are remote from major airport facilities.

24. Maverik supervises its retail stores by making visits to those stores which visits are facilitated by travel using a small plane.

25. Maverik determined that use of a VLJ, with increased speed, economic efficiencies and safety margins would be beneficial in its operations.

26. Maverik decided to purchase an Eclipse EA-500 but instead of being placed on a long reservation list, purchased by assignment the reservation for serial number 307 and paid to the assignor the prior deposit of $150,000.00, plus additional compensation.

27. Due to cancellation or termination of reservations by one or more customers, Eclipse modified the Maverik reserved serial number to be 267, instead of 307.

### Maverik Reservation of Registration Number N533GT

28. On or about February 26, 2006, in anticipation of its purchase of an Eclipse EA-500, Maverik reserved registration number N533GT with the FAA.

29. FAA Registration number N533GT has a unique significance and a special meaning to Maverik.

30. On or about February 26, 2007, Maverik renewed with the FAA its reservation of registration number N533GT.

### Maverik Purchase of Eclipse EA-500 Serial Number 000267

31. Pursuant to the Agreement (the Aircraft Purchase Agreement as previously defined), Eclipse agreed to sell to Maverik the Eclipse EA-500 model aircraft designated as "Aircraft Serial # 000267."

32. Pursuant to the Agreement, Maverik paid an additional deposit of $655,035.60 to Eclipse on March 29, 2007, for total deposits of $805,035.60 paid to Eclipse for application against the purchase price of the Aircraft.

33. Pursuant to the Agreement, Maverik selected certain items of optional equipment to be included as part of the Aircraft.

34. Pursuant to the Agreement, Eclipse agreed to deliver the Aircraft to Maverik during the month of August 2007 (the "Scheduled Delivery Date").

35. Pursuant to the Agreement, Eclipse agreed to notify Maverik of any change in the Scheduled Delivery Date at least two months prior to the Scheduled Delivery Date.

36. In conjunction with its purchase of the Aircraft, by letter dated March 29, 2007, Maverik granted permission to Eclipse to request that the FAA authorize Maverik's reserved registration number of N533GT be affixed to the Aircraft, serial number 267.

**Eclipse Delay**

37. Because Eclipse encountered delays and did not want Maverik to terminate the Agreement, Eclipse agreed to provide Maverik a Delayed Delivery Discount, as defined in the Agreement, and a waiver of further CPI-W price adjustments.

38. Upon information and belief, Eclipse manufactured the Aircraft in accordance with the specifications of the Agreement and the Maverik designated optional equipment, except for the deletion of the "Copilot Package", which option was eliminated by Eclipse.

**Serial Number 267 identified to Maverik Registration Number N533GT**

39. Without an explicit authorization from the FAA, a registration number may not be painted on any aircraft.

40. Based upon Maverik's instruction, Eclipse requested the FAA authorization to assign the Maverik reserved registration number of N533GT to the Aircraft, described as the

Eclipse manufactured model EA-500 aircraft bearing serial number 267, which would permit Eclipse to paint that registration number on the Aircraft.

41. After receipt of the FAA authorization, Eclipse painted the Maverik reserved registration number of N533GT on the tail of Eclipse EA-500, serial number 267, as shown in the actual photos of the Aircraft taken by Eclipse delivery personnel in October 2008, attached hereto as Exhibit B and incorporated herein by this reference.

42. In addition, Eclipse specifically built an identification tag of registration number N533GT and built it into the instrument panel of the Aircraft, as shown in the actual photo of the Aircraft taken by Eclipse delivery personnel in October 2008, attached hereto as Exhibit C and incorporated herein by this reference.

### **Final Production and Delivery**

43. On or about September 23, 2008, Eclipse sent Maverik a letter indicating that delivery of the Aircraft could be effectuated the week of October 20, 2008, and providing various sample documents, including the aircraft delivery flight checklist.

44. Eclipse also requested that Maverik complete the FAA Aircraft Registration Application to reflect Maverik's ownership of the Aircraft, serial number 267.

45. Eclipse test flew the Aircraft, serial number 267, in October 2008, in preparation for final delivery.

46. Eclipse indicated that delivery of the Aircraft was delayed and could not be delivered the week of October 20, 2008.

47. On or about October 10, 2008, Eclipse issued to Maverik an amended final invoice to complete the purchase of the Aircraft.

48. On October 22, 2008, Eclipse indicated the need to complete a Service Bulletin for the flight in known icing system followed by final approval from the FAA but that the Aircraft could be delivered by Thanksgiving 2008.

49. Upon information and belief, all certifications and licensing for the Aircraft to be airworthy have been issued or completed as needed except for Eclipse deciding not to submit FAA Form 8130-6 for the Aircraft.

50. No documents pertaining to ownership or encumbrances for the Aircraft have been filed with the FAA.

51. Maverik is ready, willing and able to pay and hereby tenders the balance of the purchase price as required by the Agreement.

52. All paragraphs of this complaint apply to all claims for relief regardless as to any of the headings set forth herein.

53. The Aircraft Purchase Agreement is governed by New Mexico law.

**First Claim for Relief**
**(UCC Special Property)**

54. Maverik has a special property in the Aircraft as defined in Article 2 of the New Mexico Uniform Commercial Code.

55. Upon information and belief, defendants dispute the special property of Maverik in the Aircraft.

56. A substantial and real controversy exists as to the special property of Maverik in the Aircraft.

## Second Claim for Relief
### (Specific Performance)

57. The Aircraft Purchase Agreement identifies the Aircraft as serial number 267.

58. Eclipse model EA-500, serial number 267 is unique personal property.

59. Pursuant to Article 2 of the New Mexico Uniform Commercial Code, the Aircraft is unique entitling Maverik to specific performance.

## Third Claim for Relief
### (Replevin and Recover)

60. The Aircraft is specifically identified to the Aircraft Purchase Agreement.

61. Maverik is unable to effectuate a cover, as defined by Article 2 of the New Mexico Uniform Commercial Code, because the Aircraft is unique.

62. Maverik is entitled to replevy the Aircraft in accordance with Article 2 of the New Mexico Uniform Commercial Code.

63. From no later than April 5, 2007, the Aircraft has been specifically identified to the Maverik Aircraft Purchase Agreement.

64. The Aircraft has been specially manufactured to the specifications and options requested by Maverik and set forth in the Aircraft Purchase Agreement.

65. Prior to the debtor filing its voluntary petition for relief under chapter 11 of title 11 of the United States Code, the Aircraft was marked and specifically identified to the Aircraft Purchase Agreement and in accordance therewith was identified with FAA registration no. N533GT, reserved by Maverik.

66. Upon information and belief, Eclipse was or became insolvent within 10 days of March 29, 2007.

## Fourth Claim for Relief
### (Equitable Title or Alternatively Equitable Lien)

67. Under New Mexico law, once the Aircraft Purchase Agreement had been executed and the Aircraft was manufactured, Maverik acquired equitable title to the Aircraft, subject only to Maverik delivering the final payment.

68. Alternatively, New Mexico common law recognizes an equitable lien on the Aircraft with respect to deposits specifically identified to the Aircraft.

69. In the event equitable title is not granted in favor of Maverik, then Maverik is entitled to an equitable first priority lien on the Aircraft with respect to all deposits paid.

70. Maverik has a special property in the Aircraft and is entitled to specific performance of its contract and replevin of the Aircraft.

71. Eclipse is in the business of manufacturing and selling aircraft.

72. The Aircraft was purchased by Maverik in good faith.

73. Any security interest of the lenders were granted by Eclipse.

74. Maverik purchased the Aircraft in the ordinary course of business.

75. Maverik's special property and interest in the Aircraft is superior to that of any security interest created in favor of the Lenders.

76. There is a substantial and real controversy as to whether Lenders have any security interest in the Aircraft in light of Maverik's purchase in the ordinary course of business.

### Fifth Claim for Relief
### (Declaratory Relief-Not Property of Estate)

77. Because of Maverik's right to specific performance of the Aircraft Purchase Agreement, Maverik's right to replevy the Aircraft, Maverik's purchase of the Aircraft in the ordinary course of business, and Maverik's equitable title to the Aircraft, the Aircraft is not property of the bankruptcy estate of Eclipse.

78. Eclipse desires to sell the Aircraft creating a substantial and real controversy as to whether the Aircraft is property of the bankruptcy estate in accordance with 11 U.S.C. § 541.

### Sixth Claim for Relief
### (Declaratory Relief-§ 363 Sale of Aircraft Prohibited)

79. Maverik asserts that the Aircraft is not property of the estate, that Maverik is the equitable owner of the Aircraft and that the lenders do not have security interest therein.

80. 11 U.S.C. § 363(b) prohibits Eclipse from selling the Aircraft.

81. Eclipse has filed motions with this Court requesting that it be entitled to sell the Aircraft to ETIRC.

82. A substantial and real controversy exists as to whether the Aircraft may be sold in accordance with 11 U.S.C. § 363.

WHEREFORE, Maverik respectfully prays that this Court enter judgment in its favor and against Defendants, as follows:

1. Declaring that Maverik is the owner of FAA Registration No. N533GT; and

2. Declaring that the Aircraft Purchase Agreement may be enforced according to its terms.

3. Declaring the balance due from Maverik pursuant to the Agreement; and

4. Declaring that Maverik was the buyer of the Aircraft in the ordinary course of business; and

5. Declaring that the Aircraft is specifically identified pursuant to the terms of the Aircraft Purchase Agreement; and

6. Declaring that Maverik possesses a special property in the Aircraft in accordance with Article 2 of the New Mexico Uniform Commercial Code; and

7. Declaring that Maverik is entitled to specific performance of the Aircraft Purchase Agreement; and

8. Declaring that Maverik has a right to replevy the Aircraft, free and clear of any liens or encumbrances that may be asserted by defendants; and

9. Declaring that Maverik has a right to recover the Aircraft, free and clear of any liens or encumbrances that may be asserted by defendants; and

10. Declaring that the rights of Maverik as the buyer of the Aircraft in the ordinary course of business are superior to the rights of the Lenders that may be asserted therein; and

11. Declaring that Maverik has equitable title to the Aircraft; and

12. Alternatively, declaring that Maverik has an equitable lien on the Aircraft superior to the interests of the Defendants; and

13. Declaring that the Aircraft is not property of the bankruptcy estate of Eclipse; and

14. Declaring that the Aircraft may not be sold pursuant to 11 U.S.C. § 363, without the consent of Maverik; and

15. Declaring that the equitable title of Maverik in the Aircraft is not within the definition of "interest" as set forth in 11 U.S.C. § 363(f); and

16. Mandating that Eclipse finalize the Aircraft Purchase Agreement by delivering the Aircraft to Maverik upon the receipt by Eclipse of the balance due from Maverik; and

17. Awarding Maverik its costs and fees incurred in prosecuting this action, including attorneys fees and costs incurred therein; and

18. Awarding Maverik such other and further relief as this Court deems necessary or proper in equity.

RESPECTFULLY submitted this 16th day of January, 2009.

DORSEY & WHITNEY (DELAWARE) LLP


/s/ Robert W. Mallard\_\_\_
Eric Lopez Schnabel (No. 3672 )
Robert W. Mallard (No. 4279)
1105 North Market Street, Suite 1600
Wilmington, Delaware 19801
Telephone: (302) 425-7162
Facsimile: (646) 514-9843
Email: schnabel.eric@dorsey.com
Email: mallard.robert@dorsey.com

*Attorneys for Maverik, Inc.*

1017113